HOWE *v.* WOODRUFF and Others.

Howe
v.
WOODRUFF.

Complaint to redeem mortgaged premises, in substance as follows: That in October, 1853, *Cornelia M. Baker*, being then the owner of the premises in question, with her husband, *Charles F. Baker*, mortgaged the same to one *Martha J. Fish*, to secure the payment of three notes—one for 100 dollars, one for 44 dollars, 62 cents, and one for 55 dollars, 38 cents; that afterwards, said *Martha* assigned the note for 100 dollars, and the mortgage, to *Otis Newton*, who, on the 12th of *September*, 1854, assigned the note and mortgage to the plaintiff; that the other two notes are owned by *Morse*, and *Morse* and *Woodruff*, who are made defendants; that the mortgage above mentioned is subject to a prior mortgage, executed by said *Martha J. Fish*, and her husband, *Charles F. Fish* (she then being the owner of the property), to one *Samuel Bartlett*, to secure the payment of 200 dollars, which last mentioned mortgage was executed in *March*, 1853, and was assigned by *Bartlett* to *Hubbard*. Prayer, that plaintiffs be permitted to redeem the senior mortgage, and for other relief. Answer, 1. That, at the commencement of the suit, *Woodruff* was the owner in fee of the premises; that the mortgage executed by *Fish* and wife to *Bartlett*, and by him assigned to *Hubbard*, was foreclosed by *Hubbard*, by advertisement and sale pursuant to a power of sale contained in the mortgage, and at such sale *Woodruff* bid off the premises, and became the purchaser. 2. That said *Cornelia Baker* fully paid and satisfied said note of 100 dollars to *Newton* while he was the owner thereof. 3. That after such sale and purchase by *Woodruff*, *Cornelia*, and her husband, conveyed the premises to the plaintiff by deed, which is the plaintiff's only title to the premises. 4. That the plaintiff acted as the agent of said *Cornelia Baker*, in the payment of the note to *Newton*, and after such payment, he caused to be made an assignment of the note and mortgage by *Newton* to himself, but that such assignment conveyed no interest to the plaintiff; that *Emery Morse* and *Morse* and *Woodruff* are the owners of the other notes secured by the mortgage, and the defendants are willing, and offer to pay whatever may be due thereon. Reply, that the plaintiff denies the matters set up in the answer, except so far as they admit the matter charged in the complaint. For all the purposes of the suit, the plaintiff admits the validity of the sale set up, to *Woodruff*, and he raises no question, except as to his right to redeem the premises, reserving his right to contest the validity of such sale in another suit. The evidence showed that on the 15th of *March*, 1854, *Baker* and wife executed to the plaintiff a mortgage on the premises in question, to secure the payment of a note for 306 dollars, given by *Baker* to the plaintiff. The mortgage executed by *Fish* and wife to *Bartlett* was dated *March* 28, 1853; and the sale under the power therein contained, was made on the 31st of *December*, 1853. Between the date of the *Bartlett* mortgage, and the sale under it, viz., on the 14th of *October*, 1853, the mortgage by *Baker* and wife to *Fish* was executed, which, together with the note for 100 dollars, came to the plaintiff by assignment. Mrs. *Baker* furnished to the plaintiff the money paid to *Newton*, to procure the assignment of the note and mortgage to the plaintiff; but from the evidence, it appears to have been the intention of the plaintiff and Mrs. *Baker*,

not thereby to cancel or extinguish the note or the mortgage, but to place the plaintiff in a position to redeem the senior mortgage, and in that manner realize as much of the note for 306 dollars, secured by mortgage on the same premises, as possible.

*Held*, 1. That although the fee in the premises might have been in Mrs. *Baker*, and although she furnished to the plaintiff the money with which to procure an assignment of the note, by *Newton* to the plaintiff, yet that such payment to *Newton*, with the money thus furnished, did not necessarily cancel or extinguish the note or the mortgage, so far as it was a security for the payment of the note. The transaction, on its face, did not purport to be a payment and extinguishment of the note or mortgage, as they were both duly assigned to the plaintiff. The general rule of law is, that where the mortgage and the fee vest in the same person, and in the same right, the mortgage is merged in the fee simple. But notwithstanding this technical rule of law, it is well settled that a Court of equity will keep an incumbrance alive, or consider it extinguished, as will best subserve the purposes of justice, and the actual and just intention of the party.

2. That under the circumstances, although Mrs. *Baker* furnished the money that procured the assignment of the note and mortgage to the plaintiff, the transfer to him is valid, and vests in him the same right which *Newton* held before the assignment.

3. That the plaintiff, holding a mortgage which accrued before the sale, was not in any manner prejudiced thereby, nor were his rights, as such holder, affected by the sale. So far as his rights under the mortgage thus assigned to him are concerned, the case stands as if no sale had been made. To protect himself and secure his own claim, he has a right to redeem the prior mortgage.

4. That the plaintiff, holding a note and mortgage executed before the sale, and the sale not in any manner affecting his rights, so far as that note and mortgage are concerned, he has a right, for the purpose of securing the benefit of his mortgage, to redeem the prior incumbrance.

APPEAL from the *Lagrange* Court of Common Pleas.

WORDEN, J.—Complaint by the appellant against the appellees, to redeem certain mortgaged premises.

The substantial facts set up in the complaint, are, that in *October*, 1853, *Cornelia M. Baker*, being then the owner of the premises in question, with her husband, *Charles F. Baker*, mortgaged the same to one *Martha J. Fish*, to secure the payment of three notes—one for 100 dollars, one for 44 dollars, 62 cents, and one for 55 dollars, 38 cents; that afterwards, said *Martha* assigned the note for 100 dollars, and the mortgage, to *Otis Newton*, who, on the 12th of *September*, 1854, assigned the note and mortgage to the plaintiff; that the other two notes are owned by *Morse*, and *Morse* and *Woodruff*, who are made defendants; that

the mortgage above mentioned is subject to a prior mortgage executed by said *Martha J. Fish*, and her husband, *Charles F. Fish* (she then being the owner of the property), to one *Samuel Bartlett*, to secure the payment of 200 dollars, which last-mentioned mortgage was executed in *March*, 1853, and was assigned by *Bartlett* to *Hubbard*. Prayer, that plaintiffs be permitted to redeem the senior mortgage, and for other relief.

The defendants answered, setting up—

*First.* That at the commencement of the suit, *Woodruff* was the owner in fee of the premises; that the mortgage executed by *Fish* and wife to *Bartlett*, and by him assigned to *Hubbard*, was foreclosed by *Hubbard*, by advertisement and sale pursuant to a power of sale contained in the mortgage, and at such sale *Woodruff* bid off the premises and became the purchaser.

*Second.* That said *Cornelia Baker* fully paid and satisfied said note of 100 dollars to *Newton*, while he was the owner thereof.

*Third.* That after such sale and purchase by *Woodruff*, *Cornelia*, and her husband, conveyed the premises to the plaintiff by deed, which is the plaintiff's only title to the premises.

*Fourth.* That the plaintiff acted as the agent of said *Cornelia Baker*, in the payment of the note to *Newton*, and after such payment, he caused to be made an assignment of the note and mortgage by *Newton* to himself; but that such assignment conveyed no interest to the plaintiff; that *Emery Morse* and *Morse* and *Woodruff* are the owners of the other notes secured by the mortgage, and the defendants are willing, and offer to pay whatever may be due thereon.

For replication, the plaintiff denies the matters set up in the answer, except so far as they admit the matter charged in the complaint. For all the purposes of the suit, the plaintiff admits the validity of the sale set up, to *Woodruff*, and he raises no question, except as to his right to redeem the premises, reserving his right to contest the validity of such sale in another suit.

Trial by the Court, finding and judgment for the defendants, a motion for a new trial being overruled.

It appears by the evidence, which is set out in the bill of exceptions, that, on the 15th of *March*, 1854, *Baker* and wife executed to the plaintiff a mortgage on the premises in question, to secure the payment of a note for 306 dollars, given by *Baker* to the plaintiff. The mortgage executed by *Fish* and wife to *Bartlett*, was dated *March* 28, 1853; and the sale, under the power therein contained, was made on the 31st of *December*, 1853. Between the date of the *Bartlett* mortgage, and the sale under it, viz., on the 14th of *October*, 1853, the mortgage by *Baker* and wife to *Fish* was executed, which, together with the note for 100 dollars, came to the plaintiff by assignment.

Mrs. *Baker* furnished to the plaintiff the money paid to *Newton*, to procure the assignment of the note and mortgage to the plaintiff; but from the evidence, it appears to have been the intention of the plaintiff and Mrs. *Baker*, not thereby to cancel or extinguish the note or the mortgage, but to place the plaintiff in a position to redeem the senior mortgage, and in that manner realize as much of the note for 306 dollars, secured by mortgage on the same premises, as possible.

We are of opinion, that, although the fee in the premises might have been in Mrs. *Baker*, and although she furnished to the plaintiff the money with which to procure an assignment of the note, by *Newton* to the plaintiff, yet such payment to *Newton*, with the money thus furnished, did not necessarily cancel or extinguish the note, or the mortgage, so far as it was a security for the payment of the note. The transaction, on its face, did not purport to be a payment and extinguishment of the note or mortgage, as they were both duly assigned to the plaintiff. The general rule of law is, that where the mortgage and the fee vest in the same person, and in the same right, the mortgage is merged in the fee simple. But, notwithstanding this technical rule of law, it is well settled that a Court of equity will keep an incumbrance alive, or consider it extinguished, as will best subserve the purposes of

justice, and the actual and just intention of the party. *Forbes* v. *Moffatt*, 18 Ves. 384.— *Gardner* v. *Astor*, 3 Johns. Ch. 53.— *Starr* v. *Ellis*, 6 *id.* 393.— *Hatch* v. *Kimball*, 16 Maine R. 146.— *Holden* v. *Pike*, 24 *id.* 427.

In *Hatch* v. *Kimball*, it is said, that "It is, in each case, a question of intention whether or not there is an extinguishment of the charge upon the estate. If at the time the mortgage is taken in, the intention to extinguish it appears, that is decisive. If it does not, equity presumes it to be outstanding or extinguished, as the interest of the party may require." *Vide*, also, *Clift* v. *White*, 2 Kernan, 519.

In the case at bar, it not only appears to have been the intention of the parties to keep the mortgage alive, so far as the note for 100 dollars is secured thereby, but it was evidently for the interest of Mrs. *Baker* that it should be so kept alive. Her equity of redemption had been cut off, by a sale of the property, and if a transfer of the note and mortgage by *Newton* to the plaintiff, would enable the plaintiff to make not only that note, but all or a part of the note for 306 dollars, which he held against *Baker*, out of the property, it would so far pay a debt which would otherwise devolve a personal liability upon her husband. We think that, under the circumstances, although Mrs. *Baker* furnished the money that procured the assignment of the note and mortgage to the plaintiff, the transfer to him is valid, and vests in him the same right which *Newton* held before the assignment.

What is the effect of the sale to *Woodruff*, so far as the interests of the plaintiff are concerned? This must be determined by the provisions of the statutes of 1843, under which the sale was made. By § 58, R. S. 1843, p. 464, it is provided that "No mortgagee of the same premises, or any part thereof, whose title accrued prior to such sale, &c., shall be prejudiced by any such sale, nor shall their rights or interests be, in any way, affected thereby."

The plaintiff, holding a mortgage which accrued before the sale, was not in any manner prejudiced thereby, nor were his rights as such holder in any manner affected by

the sale. So far as his rights under the mortgage thus assigned to him are concerned, the case stands as if no sale had been made. To protect himself and secure his own claim, he has a right to redeem the prior mortgage. Whether or not his right to redeem could be defeated by a payment or tender to him of the amount due on the note and mortgage thus assigned to him, so as to cut off his claim on the subsequent note and mortgage for 306 dollars, executed after the sale, is a question that has not been argued by counsel, and one which we do not decide. But the plaintiff, holding a note and mortgage executed before the sale, and the sale not, in any manner, affecting his rights, so far as that note and mortgage are concerned, he has a right, for the purpose of securing the benefit of his mortgage, to redeem the prior incumbrance. If a payment or tender of what may be due on the mortgage thus held by assignment, would defeat the plaintiff's right to redeem, no such tender or offer of payment is made. The offer to pay, contained in the pleading of the defendants, is confined to the other two notes secured by the mortgage, and in the hands of some of the defendants.

We are of opinion, that upon the law and the facts in the case, the plaintiff was entitled to relief, and that a new trial should have been granted.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*J. B. Howe*, for the appellant (1).

*J. M. Flagg* and *O. H. Smith*, for the appellees (2).

(1) Mr. *Howe* argued as follows:

The holder of one of several notes may foreclose in chancery, making the other holder or holders parties. *Stanley* v. *Beatty*, 4 Ind. R. 134. It follows that he may, in like manner, file a bill to redeem, making the other holder or holders parties. The appellant was the holder of the note last falling due. The appellees, holding the other notes first falling due, are entitled to priority of payment. *Id.* 135. This, however, may not be important in the decision of the present question, the case having been argued and decided below wholly upon this question—What effect upon the appellant's right to redeem had the fact which he stated in his answer to appellees' written interrogatories, that the money with which the junior mortgage and the note of 100 dollars last falling due, were purchased by him of *Newton*, the holder and assignee thereof, was advanced by Mrs. *Baker?*

The object of Mrs. *Baker* in furnishing the money, as stated in the appellant's answer to the interrogatories, was to enable him, by redeeming the first mortgage, to secure to himself the amount of a third mortgage, executed by Mrs. *Baker*, after the foreclosure sale, for money loaned : the premises having been sold, in fact, at much less than their value.   The motive is only material for the purpose of showing clearly, if indeed it is not to be presumed, that Mrs. *Baker* did not intend simply to pay off the note held by *Newton*.   The answer to the interrogatories shows plainly that the particular object was to enable appellant to redeem and obtain payment of his third mortgage, and give Mrs. *Baker* the benefit of any surplus that might possibly be left, after paying off all incumbrances, by selling the property at a fair price.   It cannot be imagined that Mrs. *Baker* would voluntarily discharge the note, and thereby the mortgage, when in the hands of *Newton* the latter was valid and outstanding, and could be resorted to for the purpose of *obtaining satisfaction of the former.*   She was also indebted to the appellant at the time, and the effect of the advance of the money by her, was merely to give the appellant a good security in the shape of the note and mortgage assigned to him by *Newton*, in the place, so far, of his defective security for the loan he had made her.   But it is immaterial who advanced the money; for the general rule in equity is, that if it be for the interest of the assignee of a mortgage, that it be upheld, it shall be considered as subsisting.   *Holden* v. *Pike*, 24 Maine R. 427.   Even if no assignment had been made by *Newton*, but the amount of his note and mortgage merely paid to him, without any intention expressed one way or the other, equity would presume the mortgage either outstanding or extinguished, just as the interests of the appellant might demand.   His interests would, in such case, demand that it be deemed outstanding.   *Hatch* v. *Kimball*, 16 Maine R. 146.

In this case, Mrs. *Baker*, who furnished the money, was one of the mortgagors in the junior mortgage assigned to the appellant by *Newton*.   Her interest in the equity of redemption was gone by the foreclosure, and she had no remaining interest in the premises.   If the note and mortgage had been purchased of *Newton* entirely for her benefit, there could be no merger of the mortgage interest in the equity of redemption ; for she had no such equity.   She signed the note, however, accompanying that mortgage, as well as the mortgage ; but this amounted to nothing—no more, certainly, than her joining with her husband in the covenants in a deed would bind her.   In the latter case, the covenants would be her husband's only : in the former the note was her husband's only.   There was nothing to prevent her from purchasing the note and mortgage through a trustee, in order to make the same available against the mortgaged property, after redeeming the prior mortgage.

But she made no such purchase.   The purchase was first for the benefit and security of the complainant, who, as the pleadings and evidence show, had loaned money to her; and in the next place, she had only the contingent benefit and advantage of any surplus which might possibly remain, after satisfying all the claims.   It is due to the judge below to say, that he probably did not fully apprehend the nature of the question, or he could not have rendered such a decree.

The authorities are so plain, and the equity so clear, that where there is an intention to redeem, that intention shall be supported, even when there may be a technical merger, and that, as a general rule, when no intention is expressed,

the Court will consider what is most to the advantage of the party paying the money, that it is difficult to imagine any ground upon which the Court can have based the decree. The only ground referred to by the Court was the fact that Mrs. *Baker* advanced the money; and that was the ground upon which the appellees' counsel argued the case, and will, most probably, be the only ground upon which he will seek to sustain the decree. This is about as important as the question whether Mrs. *Baker* furnished the money in coin or bank notes. The only imaginary reason for the decree is, that the judge supposed that if Mrs. *Baker* furnished the money, and it was actually paid to *Newton* as her money and for her benefit alone, there would be a merger of the mortgage interest in her equity of redemption, or she would be merely paying her own debt. The first position is not true, as already shown, for she had no equity of redemption; and if she had, there was no merger necessarily, if equity required otherwise. *Peet* v. *Beers*, 4 Ind. R. 46.

The second position is equally untenable; for the debt was not her debt, although she signed the note, but her husband's only—she being incapable of thus binding herself. 1 Pars. on Cont. 286. A married woman cannot even indorse a note made payable to her before coverture; still less one made payable afterwards. *Id.* 212.—*Savage* v. *King*, 17 Maine R. 301, and other cases cited by *Parsons*. Therefore, not being bound by the note, she could advance money to any one in trust to procure an assignment of the note and mortgage in *Newton's* hands. But it is utterly false in fact, to assume that the assignment was to be for her exclusive benefit. The first object, as already stated, was to enable the appellant to procure the assignment for the benefit of himself, and then for the contingent benefit of Mrs. *Baker*. Courtesy would require me, if possible, to conjecture some other ground on which the judge's decree might be placed, but it is impossible.

The inquiry, who advanced the money, is simply ridiculous. The money advanced by her ceased to be hers after the advance; for after redemption and on foreclosure by appellant, to whom would the mortgage purchased by *Newton* belong? To the appellant, certainly; and the amount of it would be credited upon the mortgage given to the appellant by *Baker* and wife; and, then, after deducting the balance due upon that mortgage, and the amount paid the appellee upon redemption and all costs, any remaining balance would belong to Mrs. *Baker;* but after parting with the money required to purchase the mortgage of *Newton*, she had no legal right and no equity in respect to that particular money. It therefore belonged to the appellant, as did the mortgage purchased with it of *Newton*.

(2) Mr. *Flagg*, for the appellees, submitted the following:

The foreclosure and sale took place under the statutes of 1843, and the rights of the plaintiff as to redemption, so far as they are affected by statutory provisions, will be determined by that code. See R. S. 1843, p. 464, § 58.

The foreclosure and sale by *Hubbard*, and the purchase by *Woodruff*, then, were "an entire bar of all claim of equity of redemption of the mortgagors, their heirs and representatives, and of all persons claiming under them by virtue of any title subsequent to the mortgage," foreclosed by *Hubbard;* and as the plaintiff's mortgage and deed from *Baker* and wife, were both subsequent to such mortgage, he can derive no benefit or rights from them to make out a right to redeem. His right to redeem, if he has such a right, is derived solely

from the assignment made to him by *Newton*. Did that assignment give the plaintiff in this case any such right?

In the first place, I would remark that this case is one of that large class which come before this Court simply upon the weight of evidence. The cause was tried by the Court, no charges were given or refused, no exceptions taken to any ruling of the Court, no error, in short, alleged, only that from the evidence the Court should have found for the plaintiff, but had the temerity to find for the defendants. The finding of the Court is equivalent to the verdict of a jury; and this Court have shown therein repugnance to setting aside the verdict of a jury upon the weight of evidence, in so marked a manner, and in so many instances, that it may be regarded as almost a rule that no case will be reversed for that cause. *Marsh* v. *Wellington*, 7 Ind. R. 320. In *Doe* v. *Herr*, 8 Ind. R. 24, the Court, by STUART, J., say, "That the same sacredness attaches to, and the same presumptions arise in favor of, the finding of the Court, as are to be allowed in favor of the verdict of a jury."

The only evidence in the case, except the deeds and mortgages, was the plaintiff's answers to the interrogatories filed.

The main issue of fact in the case was, whether the mortgage and note assigned by *Newton* to *Howe* had been paid or not, previous to the commencement of this suit. If the plaintiff is to be believed, there can be no doubt on this point. He states expressly, that he did pay them himself with money furnished him by Mrs. *Baker*. As a matter of fact, then, the mortgage assigned by *Newton* to *Howe*, was paid by one of the makers thereof, previous to the commencement of this suit; for in that transaction, *Howe* can only be regarded as the agent of Mrs. *Baker*. And this Court say, per PERKINS, J., in *Ledyard* v. *Chapin*, 6 Ind. R. 320: "When the money to secure which a mortgage has been executed, is fully paid, it is *functus officio* and dead, and can be no longer available in the hands of any one."

But the plaintiff insists that the Court erred in its application of the law to the facts proven. If this were so, he is not in a position to avail himself of the error. He did not require the Court to make a special statement of the facts and the questions of law decided thereon, and then except to the decision, as he might have done. See 2 R. S. p. 115, § 341; 6 Ind. R. 494.

The motion for a new trial is directed simply to the sufficiency of the evidence to sustain the finding, in the absence of exceptions to errors of law taken at the time. The record in this case, then, presents no question for examination here as to errors of law.

But, waiving this point, we insist that the Court below was right in its law, as well as facts.

In the first place, the plaintiff's title, such as it was, accrued subsequent to the sale under the *Bartlett* mortgage and the purchase by *Woodruff*, and for that reason, he was barred by that foreclosure. R. S. 1843, p. 464, § 58.

Again: The money paid to *Newton* by *Howe* was Mrs. *Baker's*, and was, in legal contemplation, paid by her. *Qui facit per alium, facit per se.* Hence, she, or she and her husband, were the proper persons to redeem, if anybody.

But we contend that neither did, nor could, under that assignment, acquire any such right. We do not deny that equity will, in a proper case, keep alive a mortgage otherwise dead; but it is always to subserve equity or preserve a right. That it will, for the protection of those who are compelled to pay money to protect their rights, subrogate them to the rights of those whose

claims they have been compelled to pay, see *Peet* v. *Beers*, 4 Ind. R. 46, and cases there cited. But we do deny that the plaintiff or *Baker* did or could by the assignment from *Newton*, bring themselves clearly within the rule laid down in *Peet* v. *Beers*. *Baker* had no rights to protect, that a Court of equity should be asked to keep alive a dead mortgage for her benefit; for all her claims were expressly barred by the foreclosure of the *Bartlett* mortgage. R. S. 1843, *supra*. And *Howe's* mortgage and deed from *Baker*, being subsequent to such foreclosure, conferred upon him no rights which a Court of equity would protect. Being, then, outside of that rule, even a Court of equity could not call that dead mortgage to life, and all their fancied rights must die with it.

Mr. *Smith*, for the appellees, added the following:

The question is—Can a junior mortgagee redeem mortgaged premises, in the hands of the purchaser? Conceding this question in favor of appellant, we say this assumed junior mortgagee cannot sustain this complaint to redeem, for the following reasons: ·

*First*. The note and mortgage that he seeks to enforce, were paid off and satisfied before it was assigned to him, leaving the only liability to him between himself and assignee, for the amount he paid for the assignment; and he says he paid nothing. So he has no claim on the mortgage or note.

*Second*. The appellant shows that he claims only a part of the amount secured by the second mortgage; and still he sues alone, without making the other claimants for the residue of the second mortgage parties.

*Third*. The appellant seeks to redeem the lots, without a tender of the amount due on the first mortgage, with the interest and costs of sale, and without bringing the money into Court. This is fatal in all such cases.

*Fourth*. The appellees, in any and all events, had a right to pay off the junior mortgage, and perfect their equitable, as well as legal, title.